FILED
2005 Sep-20  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| DONALD WAYNE DOUGLAS, | ] | |
| | ] | |
| Movant, | ] | |
| | ] | |
| vs. | ] | CIVIL ACTION NO. 02-SLB-RRA-8001-S |
| | ] | CRIMINAL NO. 00-B-0151-S |
| | ] | |
| THE UNITED STATES OF AMERICA, | ] | |
| | ] | |
| Respondent. | ] | |

## MEMORANDUM OPINION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255.  The movant, Donald Wayne Douglas, was convicted in this court on June 14, 2000, on his plea of guilty to one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(Count 2).  He was sentenced on August 4, 2000, to a term of imprisonment for 96 months.  Count 1 of the indictment was dismissed pursuant to the plea agreement.

On appeal, Douglas argued that: 1) the trial court abused its discretion by not sentencing him at the low end of the guideline range; 2) the court violated his Eighth Amendment rights by imposing a sentence that was greatly disproportionate to the charged offense; and 3) the court violated his due process rights by imposing a sentence above that agreed to in the plea agreement.  The Eleventh Circuit Court of Appeals affirmed Douglas's conviction and sentence on February 7, 2001.

In support of his motion to vacate, Douglas claims that he received ineffective assistance of counsel because his attorney: 1) "provided him with material misadvice;" 2) failed to object to the

probation officer's attempt to use at least two of the petitioner's prior convictions to enhance his sentence; and 3) failed to argue for a downward departure pursuant to U.S.S.G. § 5K2.0.

In response to the court's order to show cause, the respondent has filed an answer in which it argues that the motion to vacate is due to be denied. On April 5, 2002, Douglas filed an unsworn traverse, accompanied by affidavits.

On December 29, 2003, Douglas filed a motion for summary judgment. The government filed a response to the motion for summary judgment on February 17, 2004. On March 8, 2004, Douglas filed a reply to the government's response to his motion for summary judgment.

On September 9, 2004, Douglas filed a document entitled "Petitioner's Pro Se Motion to Correct Sentence, Resentencing and Immediate Release under 28 U.S.C. § 2255," in which he apparently sought to supplement his original motion to add a claim that he was illegally sentenced pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), because he did not brandish a firearm. The court treated the motion as a motion to supplement and granted the motion on August 26, 2005.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"

> guaranteed the defendant by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the defense.  This requires showing
> that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a

[petitioner's] failure to prove either will be fatal to his claim."  *Johnson v. Scott,* 68 F.3d 106, 109

(5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell

below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  "While it need not

be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys

representing criminal defendants.'"  *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(*quoting*

*Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)).  In

making such an evaluation, "the court should recognize that counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment."  *Strickland*, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel

must be evaluated by consideration of the totality of the circumstances.  *Stanley v. Zant,* 697 F.2d

955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of

prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of

competence expected of attorneys, a movant can obtain relief only if the error caused actual

prejudice.  *Strickland,* 466 U.S. at 691-92.  In order to establish "actual prejudice, a petitioner must

show that "there is a reasonable probability that but for the attorney's unprofessional errors, the

result of the proceeding would have been different."  *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir.

1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  *Strickland,* 466 U.S. at 694.  Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair."  *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)).  "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(*quoting Fretwell*, 113 S. Ct. at 842).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Fretwell*, 113 S. Ct. at 844.

Douglas first claims that his attorney was constitutionally ineffective because he "provided him with material misadvice."  Specifically he alleges that although his attorney knew he was a drug "addict and was going to smoke the marijuana for his own enjoyment," his attorney ignored the true facts and put forth false ones, urging him to plead guilty.  Douglas contends that had he brought forth the true facts of the case "and stated the truth that he had the marijuana for his own personal use and that he did not intend to distribute the marijuana and proceeded to trial," he "certainly would have had a great opportunity to win this case at trial."  Douglas also claims that he had "advised counsel that he had forgotten that he had left the gun in the trunk of the car on New Years Day," so he was "not absolutely guilty of violating  Title 18 U.S.C. § 924(c)(1)."

The petitioner ignores the fact that during the plea proceedings, he admitted that he possessed the marijuana with the intention to sell it to his friends and that his gun was in the trunk of his car,

-4-

available for immediate use.  During the plea proceedings, Douglas testified that he understood the

charges against him and what the government would have to prove to convict him:

> THE COURT: Count Two charges you with violating Title 18, U.S.C., Section 924(c)(1) and charges that, on or about the 12th day of January, 2000, within the Northern District of Alabama, you knowingly carried a firearm, that is, a Rueger .9 millimeter semiautomatic firearm, during and in relation to a drug trafficking crime for which you may be prosecuted in a court of the United States.  That is the offense described in Count One in violation of Title 18, U.S.C., Section 924(c)(1).
> . . .
> Before you could be convicted of that count, the government would have the burden of proving beyond a reasonable doubt: First, that you committed the drug offense, trafficking offense charged in Count One of the indictment, and let me read to you that count: On or about the 12th day of January, 2000, within the Northern District of Alabama, you knowingly, intentionally, and unlawfully possessed, with the intent to distribute, a controlled substance.  That is, a mixture  and substance containing a detectable amount of marijuana in violation of Title 21, U.S.C., Section 841(a)(1).
> So, before you could be convicted of Count Two, the government would have to prove that you violated – prove you guilty beyond a reasonable doubt of Count One.  Do you understand that or not?  Do you understand what I just said to you or not?

> DEFENDANT DOUGLAS: Could you repeat that?

> THE COURT: Yes.  One of the things the government would have to prove in order for you – and I'm going to tell you the others – but one of the things they would have to prove in order for you to be found guilty of Count Two is they would have to prove that you were guilty, beyond a reasonable doubt, of Count One.  Do you understand that?

> DEFENDANT DOUGLAS: Yes.

> THE COURT: Let me tell you [what] they would have to prove in order for you to be found guilty of Count One; okay?

> DEFENDANT DOUGLAS: Okay.

> THE COURT: If you were going to trial on Count One, the government would have to prove that you knowingly possessed marijuana and willfully possessed marijuana, as charged in Count One, and that you possessed the marijuana with the intent to distribute it.  Do you understand that?

**DEFENDANT DOUGLAS:** Yes.

. . .

**THE COURT:** That's what they would have to prove in order for you to be found guilty of Count One, prove that beyond a reasonable doubt. So with regard to Count Two, they've got to prove that first. Do you understand that?

**DEFENDANT DOUGLAS:** Uh-huh.

**THE COURT:** The second thing they would have to prove is, that during and in relation to the commission of that offense, that is, the crime charged in Count One, that you carried a firearm. Third, they would have to prove that you carried the firearm knowingly.

Now, the term or the use of the phrase "to carry a firearm" means either that you had the firearm on or about your person, or you transported or possessed the firearm in such a way that it was available for immediate use, if you so desired. Do you understand the charge against you in Count Two of the indictment?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** And have you had sufficient time to discuss the charge with your attorney?

**DEFENDANT DOUGLAS:** Yes.

**THE COURT:** Are you satisfied with your lawyer and the work he has done for you?

**DEFENDANT DOUGLAS:** Yes, ma'am.

Transcript of Plea (Court Document 36), pp. 23 - 26. The prosecution then outlined the evidence

that it would present if Douglas proceeded to trial:

**MR. SALTER:** Your Honor, at trial, the evidence would show that on January 12, 2000, Birmingham police officers were conducting a driver's license roadblock in the Ensley/Birmingham, Alabama area. The defendant was in an automobile and he turned left off Avenue-C on to 24th street in Ensley. He was driving an automobile that contained two other passengers. Officer S. Williams motioned the vehicle to stop and the defendant stopped. But when the officer asked for his driver's license, he started to drive away.

**DEFENDANT DOUGLAS:** That's not true.

**THE COURT:** All right.  Yes?

**DEFENDANT DOUGLAS:** That's not true.

**THE COURT:** You say you did not start to drive away?

**DEFENDANT DOUGLAS:** No.

**THE COURT:** Okay.  Go ahead.

**MR. SALTER:** Officer Williams – there are two Williams, one J. Williams and S. Williams, yelled for the defendant to stop and they ran along with him, with his vehicle.  He slowed the vehicle almost to a stop and when Officer Williams reached the vehicle to turn it off, the defendant sped away again dragging –

**DEFENDANT DOUGLAS:** That's not true.

**THE COURT:** All right.  He said that's not true.

**MR. SALTER:** -- dragging S. Williams along with him.  The officers continued to demand the defendant to stop.  Officer S. Williams freed herself from the vehicle and the defendant stopped after the police officers pulled their weapons.  Officer S. Williams observed the defendant place his right hand between the driver's seat and the console of the automobile.  Other officers were called to assist.  The two passengers were William James Hickman and Reamus Lavar Williams.  All men were secured.

Afterwards, Officer S. Williams looked on the right side of the driver's seat between the seat and the console and saw a small plastic bag tied at the top.  It contained a green leafy substance that appeared to her to be marijuana.

An inventory of the automobile revealed ten individual packed bags of what appeared to be marijuana.  At the lower part of the console of the automobile, Sergeant D. Horton found a fully loaded Rueger .9 millimeter semiautomatic handgun, Serial Number 31112684, in the middle of the trunk under some carpet padding.

Officer S. Sanders found the fully automatic magazine in the glove box of the vehicle.  A firearms trace revealed that the defendant purchased the firearm on July 15, 1996.  The marijuana was turned over to the property room and, subsequently, to the lab for chemical analysis.  And the two packets of substances were determined to be marijuana.  One weighing 24.19 grams and one 27.65 grams, totalling 51.84 grams.

The defendant was advised of his rights by Officer Ed Hull on the same date, January 12th.  And he sat down and gave the defendant – the defendant gave his statement.  Among other things, what he stated was, he identified himself and stated

-7-

he was employed and he lived with his mother and that he was driving his girlfriend's rental car at the time. He stated that he wanted to get his firearm back, that he had no valid pistol permit, that he left the firearm in the trunk of the car at New Years. He admitted going to the Burger King restaurant to smoke marijuana prior to his stop. He denied selling drugs. Explained that he had brought those drugs from a dealer prior to that and that's why they were apparently individually wrapped. That's what we would expect to show.

Transcript of Plea (Court Document 36), pp. 27 - 30. The court then questioned Douglas about what

took place:

**THE COURT**: Let me ask you this, let me go through this first part. Did you have in the car, marijuana?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** And did you have that marijuana with the intent to later distribute it? When I say distribute it, Mr. Douglas, that doesn't mean that you had to be paid for it, you could be giving it to people or selling it or whatever. Did you have those bags with the intent to later distribute them?

**DEFENDANT DOUGLAS:** No, ma'am.

**THE COURT:** Well, that's one of the things the government has got to prove before you can be found guilty. A jury might believe differently but if you say you didn't, I can't take the plea. The government has to prove that you had that marijuana in your possession with the intent to distribute it. And if you're telling me that you didn't, I can't take your plea of guilty.

**MR. CALDWELL:** Let me clarify it.

**THE COURT:** Let me say this, too. Let me tell you something, whether you plead guilty or you're later found guilty, you don't want to lie to me.

**DEFENDANT DOUGLAS:** Yes, I know.

**THE COURT:** Because I'm the person that's going to be deciding what your sentence is if you're found guilty or if you plead guilty. You just told me and you might turn around in two or three minutes and tell me, yes, you did possess it with the intent to distribute it. You just said, no, I didn't possess it with the intent to distribute it. And I think you understood my question.

-8-

**DEFENDANT DOUGLAS:** Yes.

. . .

**THE COURT:** You're standing in from of the judge that's going to sentence you, if you're found guilty in a trial or if you decide to go ahead and plead guilty. I'm not the person you want to lie to. And it does not go over well with me when I think a defendant is standing in front of me under oath and lying.

I've got another matter I'm going to take up. We're going to finish this plea after lunch . . . .

. . .

All right. We're going to be back at 2:00. Where we are right now, I'm not accepting the plea. Because one of the elements they've got to prove is that you committed Count One. Do you understand that, Mr. Douglas?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** And don't plead guilty just because you – you plead guilty if you are guilty, otherwise, don't plead guilty. Go to trial.

Transcript of Plea (Court Document 36), pp. 30 - 34. The court then instructed Douglas to think about this over lunch and then give her his decision on pleading guilty. Transcript of Plea (Court Document 36), p. 37.

After lunch, the following occurred:

**THE COURT**: When we left, Mr. Douglas, we were talking about whether or not you intended to plead or wanted to go ahead with your plea of guilty, and I indicated to you that in order for you to be found guilty of Count Two, you also had to acknowledge that you were guilty of Count One.

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** I am going to go over again the elements with regard to Count One, and then I'm going to ask you some questions.

Before you can be found guilty of the crime charged in Count One of the indictment, the government would have the burden of proving beyond a reasonable doubt that you knowingly and willfully possessed marijuana as charged, and second, that you possessed the substance, meaning marijuana, with the intent to distribute it.

Under the law, to possess with intent to distribute means to possess with intent to deliver or transfer possession of a controlled substance to another person with or without any financial interest in the transaction.

Although you are not pleading guilty to Count One, did you, on January 12, 2000, have in your possession marijuana?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** And did you have that marijuana in your possession with intent to distribute it?

**DEFENDANT DOUGLAS:** Ma'am, we were smoking it at the time, so, yes, (pause) distribute.

**THE COURT:** Well, smoking it and wanting to distribute it to somebody is not the same thing.

**DEFENDANT DOUGLAS:** I was distributing it to my friends that was in the car with me.

**THE COURT:** I don't want to get this back on some kind of habeas petition.  I mean, I'm saying that he – the elements weren't sufficient for him to plead, and you know, let me ask you this, Mr. Douglas.

There were how many bags that were found in the car?

**MR. SALTER**: There were two, Your Honor.

**THE COURT:** No.  I thought there were a bunch of bags.

**MR. SALTER**: There were ten.  There were two sets, one about a half ounce, and another set, ten individually wrapped.

**THE COURT:** Those ten that were individually wrapped, Mr. Douglas, what did you plan to do with those?

**DEFENDANT DOUGLAS:** Distribute them.

**THE COURT:** To whom?

**DEFENDANT DOUGLAS:** My friends.

**THE COURT:** Were you going to sell them or what?

**DEFENDANT DOUGLAS:** Uh, yes, ma'am.

**THE COURT:** Is that the truth?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** All right.  And I believe I went over with you the elements that had to be proven with regard to Count Two that you are pleading guilty.  One is that you are guilty of the charge that you committed the crime charged in Count One.

**DEFENDANT DOUGLAS:** Yes.

**THE COURT:** And second, that during and in relation to the commission of that offense, you carried a firearm, and second, that you carried the firearm knowingly. And as I mentioned, to carry a firearm means that you had a firearm in your – in or around your person, or you transported or possessed the firearm in such a way that it was available for immediate use if you so desired.

**DEFENDANT DOUGLAS:** Yes.

**THE COURT:** Did you have – the firearm that was in the truck, was that your gun?

**DEFENDANT DOUGLAS:** Yes, ma'am.

**THE COURT:** And you have heard the government recite the facts.  Other than the facts that you said to me were not true,[1] was everything else that the government said substantially true?

**DEFENDANT DOUGLAS:** Yes.

**THE COURT:** Mr. Douglas, you are not required to enter a plea of guilty to Count Two, and you are free at this time to withdraw your plea of guilty to Count Two and to [re]instate or tell me that you would like to plead not guilty and go to trial.  You understand that?

**DEFENDANT DOUGLAS:** Yes, I do.

**THE COURT:** Have you heard anything here today that causes you to want to reconsider your decision to enter a plea of guilty to Count Two?

**DEFENDANT DOUGLAS:** No, ma'am.

**THE COURT:** Do you still desire to enter your plea of guilty to Count Two?

---

[1]Defendant denied that he attempted to drive away when told to stop by police officers.  Transcript of Plea (Court Doc. 36), p. 28.  This fact is not an essential element of either Count One or Count Two.

**DEFENDANT DOUGLAS:** Yes.

Transcript of Plea (Court Document 30), pp. 2 - 5. Douglas clearly indicated that he understood the elements of the offense to which he was pleading guilty and that he was in fact guilty of that offense. Douglas's attorney was not ineffective for failing to "bring forth" "true facts" that were in direct contradiction of Douglas's sworn testimony during the plea proceeding.

Douglas next claims that his attorney was constitutionally ineffective because he failed to object to the probation officer's attempt to use at least two of the petitioner's prior convictions to enhance his sentence. He states that:

Specifically the PSI report indicates at paragraph 55 that a chapter four enhancement: the defendant was convicted of violation of state Firearms Act (VSFA) and fined $456.00. Pursuant to chapter 4 of the U.S.S.G. § 4A1.1(c), the probation officer assigned the petitioner 1 criminal history point.

Petitioner contends that he was not represented by counsel on the said prior conviction. . . . The PSI report indicates at paragraph 40 that a chapter four enhancement: the defendant was convicted of Burglary of a Vehicle and sentenced to 2 years imprisonment, and $300.00 fine. Pursuant to chapter four § 4A1.1(a), the defendant received three (3) points.

Petitioner contends he was never arrested for Burglary of a Vehicle in the 291st Judicial District Court in Dallas, Texas. And the Case No. F-89A6649-U is not the petitioner therefore, this case should not have been used to enhance the petitioner's sentence. Petitioner contends that he has provided documents proving that it is not his hand writing or finger print certifying that he is the defendant of Case No. F-89A6649-U. See Exhibit I.

The PSI report indicates at paragraph 51 that a chapter four enhancement was applied: the defendant was convicted of Driving Under the Influence of Alcohol in Birmingham Municipal court and sentenced to ten (10) days in jail.

Petitioner contends that Driving Under the Influence was a misdemeanor offense which should not have been count unless the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days. See U.S.S.G. § 4A1.2(c).

Further the PSI report indicates at paragraph 54 that the defendant was convicted of Assault Third Degree. The petitioner contends that although the conviction may be correct, the facts listed within the PSI report to support the conviction in Case No. 006127981 are not correct. As those facts support a similar

> charge that the petitioner was charged with in the same court in 1988 not 1996 and that charge was eventually dropped by the State of Alabama.
>
> The PSI report indicates at paragraph 41 that the petitioner received a chapter four enhancement; The defendant was convicted of the 1/18/90 of Burglary of a Coin Operated Machine and was sentenced to 45 days, $500 fine.
>
> Petitioner contends that he should not have received one criminal history point pursuant to U.S.S.G. § 4A1.1(c) as the prior sentence had been imposed outside the ten year window period of the his commencement of the instant offense.  See U.S.S.G. § 4A1.2(e)(2).

Motion to Vacate, pp. 9 - 11.  Douglas also claims in his "Motion in Opposition to Government's Response," that his attorney was ineffective for failing to object to the use of many of his other prior convictions.  Motion in Opposition to Government's Response, pp. 11 - 16.  He claims that his attorney was constitutionally ineffective for failing to object to the use of these prior convictions to enhance his sentence.

Douglas's attorney objected to paragraph 40, the burglary of a vehicle conviction, on the ground that Douglas claimed that the conviction did not belong to him.  Transcript of Sentencing, Court Document 34, pp. 3 - 8.  Therefore, Douglas's claim that his attorney was ineffective for failing to object to paragraph 40, the burglary of a vehicle conviction, has no merit.  Furthermore, even assuming that Douglas's attorney was ineffective for failing to object to any or all of the other prior convictions listed in the presentence investigation report,[2] Douglas cannot show that he was prejudiced.  Although criminal history points were listed on the presentence investigation report for the crimes listed in these paragraphs, those points did not affect Douglas's sentence; guidelines computations were not applicable to his case because his conviction for 924(c) required a statutory minimum sentence.  This claim is due to be dismissed.

---

[2]  The court notes that Douglas makes no claim that his attorney had any knowledge of the bases for which he now attacks his prior convictions.

Douglas next claims that his attorney was constitutionally ineffective because he failed to argue for a downward departure pursuant to U.S.S.G. § 5K2.0 because of the petitioner's uncontrollable drug addiction.  Motion to Vacate at p. 13.  Again, guidelines computations were not applicable to his case because Douglas's conviction for 924(c) carried a statutory minimum sentence. Title 18, United States Code, Section 3553(e) provides the only means for departing below that minimum.  Since the government had not invoked that provision as required by § 3553(e), an argument by his attorney for a downward departure would have been futile.  Thus, Douglas's attorney was not ineffective for failing to argue for a downward departure.

## STATUTE OF LIMITATIONS

Douglas's remaining claim, that he was illegally sentenced pursuant to 18 U.S.C. § 924(c)(1)(A(ii), because he did not brandish a firearm, is barred by the statute of limitations. Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") made several changes in the law relating to habeas corpus procedure.  The AEDPA amended 28 U.S.C. § 2255 to read in part, as follows:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Douglas's sentence became final on May 7, 2001, when the ninety days in which he could have filed a petition for a writ of certiorari to the United States Supreme Court expired.  Thus, the one-year limitations period began running that day and expired on May 7, 2002.  Douglas's original motion was timely filed.  However, the supplement to his original motion was not filed until September 9, 2004, well after the limitations period expired on May 7, 2002.

New claims raised in an amended § 2255 motion will relate back to the original motion and be considered timely filed if they "arise from the 'same core facts,' and [do] not depend upon events which are separate both in time and type from the events upon which the original claims depended." *Mayle v. Felix*, 125 S. Ct. 2562, 2570 (2005).

> [F]or an untimely § 2255 claim to "relate back" under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings.  Instead, in order to relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."

*Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000)(citations omitted).

The claim raised in Douglas's supplement does not arise from the same set of facts as his original claims of ineffective assistance of counsel.  As a result, the claim presented in his supplemental motion does not relate back to the date of his timely filed § 2255 motion, and is time-barred under the AEDPA.

However, even if not time-barred, this claim is without merit.  There never was any claim made, explicitly or implicitly, by the court, the government, or the probation officer, that the defendant brandished the gun.

## CONCLUSION

In accordance with this Memorandum Opinion, the movant's motion for summary judgment and his motion to vacate are due to be **DENIED**.

An appropriate order will be entered.

**DONE** this <u>20th</u> day of September, 2005.


SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

-16-

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DONALD WAYNE DOUGLAS,                    ]
                                         ]
            Movant,                      ]
                                         ]
vs.                                      ]       CIVIL ACTION NO. 02-SLB-RRA-8001-S
                                         ]              CRIMINAL NO. 00-B-0151-S
                                         ]
THE UNITED STATES OF AMERICA,            ]
                                         ]
            Respondent.                  ]

<u>**ORDER OF DISMISSAL**</u>

        In accord with the Memorandum Opinion entered contemporaneously herewith, it is hereby

**ORDERED** that the movant's motion for summary judgment is **DENIED** and the motion to vacate

is **DENIED**.  Costs are taxed to the movant.

        **DONE** this 20th day of September, 2005.

_Sharon Lovelace Blackburn_
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE